IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JUAN AMAYA, et al.,                §
                                   §
            Plaintiffs,            §
                                   §
VS.                                §    CIVIL ACTION NO. H-15-0928
                                   §
NOYPI MOVERS, L.L.C., PIONEER      §
CONTRACT SERVICES, INC., SUSAN     §
SUSUSCO, Individually, RAUL        §
SUSUSCO, Individually, and         §
BLUGGI, L.L.C.,                    §
                                   §
            Defendants.            §

## OPINION AND ORDER

Pending before the Court in the above referenced, putative collective action to recover allegedly unpaid overtime wages, liquidated damages, and attorney's fees for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b)(2015), is Defendants NOYPI Movers, LLC ("NYOPI"), Pioneer Contract Services, Inc. ("Pioneer"), Susan Sususco, Individually, Raul Sususco, Individually, and BLUGGI, LLC's ("BLUGGI's") motion for summary judgment (instrument #26), seeking dismissal of Plaintiff Juan Amaya 's ("Amaya's") claims under the Motor Carrier Act ("MCA") exemption from FLSA's overtime pay requirements (instrument #26) on the grounds that Amaya was formerly employed by a motor carrier[1]

---

[1] A "motor carrier" is a "person providing vehicle transportation for compensation." 49 U.S.C. § 13102(14). The Secretary of Transportation has jurisdiction . . . over transportation by motor carrier and the procurement of that transportation, to the extent the passengers, property, or both, are transported by motor carrier:

(1) between a place in—

and was part of a class of employees that engaged, or was reasonably expected to engage, in activities directly affecting the operational safety of motor vehicles in interstate transportation. In other words, Amaya, like the other potential class members, claims he was not within the MCA exemption and is therefore entitled to overtime wages under the FLSA. Defendants now move for summary judgment on their affirmative defense, claiming they are exempt from paying overtime wages to Amaya and putative class members under the "Motor Carrier Act ["MCA"] exemption," 29 U.S.C. § 213(b)(1).

---

> (A) a State and a place in another State;
> (B) a State and a place in a territory or possession of the United States to the extent the transportation is in the United States;
> (C) the United States and a place in a territory or possession of the United States to the extent the transportation in the United States; or
> (D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or
> (e) the United States and a place in a foreign country to the extent the transportation is in the United States.

49 U.S.C. § 13501.

# I. Applicable Law

The FLSA, 29 U.S.C. § 207(a)(1),[2] generally requires an employer to pay employees who work more than forty hours per seven-day work week at a rate not less than one and one-half times the employee's regular hourly rate. *Allen v. Coil Tubing Servs., LLC,* 846 F. Supp. 2d 678, 701 (S.D. Tex. 2012), *aff'd,* 755 F.3d 279 (5th

---

[2] Title 29 U.S.A. § 207(a) of the FLSA provides,

(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

(2) No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this subsection by the amendments made to this chapter by the Fair Labor Standards Amendments of 1966--

(A) for a workweek longer than forty-four hours during the first year from the effective date of the Fair Labor Standards Amendments of 1966,

(B) for a workweek longer than forty-two hours during the second year from such date, or

(C) for a workweek longer than forty hours after the expiration of the second year from such date,

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Cir. 2014); *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001); *Thibodeaux v. Executive Jet Intern., Inc.*, 328 F.3d 742, 749 (5th Cir. 2003). Under 29 U.S.C. § 216(b), an employer who violates the FLSA shall be liable for "unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."

The statute also expressly exempts certain employers and/or employees from the FLSA's maximum-hour/overtime-pay requirement.[3] Relevant in the instant case is the MCA exemption in 29 U.S.C. § 213(b)(1). An employer claiming that his employee is exempted under MCA of the FLSA bears the burden of proving that exempt status applies, and exemptions are to be narrowly construed against the employer. *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004). Section 213(b)(1) of the MCA exempts from the maximum hours/overtime provisions of the FLSA an "employee with whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service under section 204 of the MCA. The Code of Federal Regulations § 782.2(a) states,

> The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employees and those only who:

---

[3] 29 U.S.C. § 213 (for example, § 207(a)(1) does not apply to those "employed in bona fide executive, administrative, or professional capacity."); *Rainey*, 314 Fed. Appx. at 694-5, citing 29 U.S.C. § 213(a)(1).

(a) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act, and

(b) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.[4]

Whether the regulations of the Department of Labor ("DOL") enforcing the FLSA apply to an employee "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 472 (5th Cir. 2010). The MCA exemption applies to employees who are (1) employed by a motor carrier or private carrier, as defined by 49 U.S.C. § 13102, and (2) engaged in activities of a character directly affecting the safety of the operation of motor vehicles in the transportation on public highways of passengers or property in interstate or foreign commerce within the meaning of the MCA, 29 C.F.R. 782.2(b)(1). The FLSA specifically exempts from the overtime requirement "any employee with respect to whom the Secretary of Transportation ("DOT") has power to establish qualifications and maximum hours of service pursuant to section 31502 of 29 U.S.C. § 213(b)(1).

---

[4]     "Motor vehicle" is defined as "vehicle, machine, tractor, trailer or semitrailer propelled or drawn by mechanical power and used on a highway in transportation, or a combination determined by the Secretary [of Transportation]." 49 U.S.C. § 13102(16).

Generally the employer must show that the exempted employees are "(1) . . . employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the [MCA] . . . and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways or property in interstate or foreign commerce within the meaning to the [MCA]. *Allen v. Coil Tubing Services, LLC*, 755 F.3d 279, 283 (5th Cir. 2014), *citing* 29 C.F.R. § 782.2(a); *Songer*, 618 F.3d at 472. "For the motor carrier exception to apply . . . [the employees] must meet both of these requirements." *Id., citing Barefoot v. Mid-Am. Dairymen, Inc.*, No. 93-1684, 1994 WL 57586, at *2 (Feb. 18, 1994)(per curiam). To satisfy the first prong, "an employer 'must be engaged in interstate commerce, which the MCA defines at commerce between a place in . . . a state and a place in another State. 49 U.S.C. § 13501(1)(A)." *Id., citing Songer*, 618 F.3d at 472. For the second prong, neither the name given to his position nor that given to the work that he does is controlling. . . . Rather, what is controlling is the character of the activities involved in the performance of [the employee's] job." *Id., citing* 29 C.F.R. 782.2(b)(2), and *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 674-75, 67 (1947). Moreover,

> if the bona fide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers, driver's helpers,

> loaders, or mechanics employed by a common carrier and
> engaged in safety-affecting occupations, that he is
> likely to be) called upon in the ordinary course of his
> work to perform, either regularly **or from time to time**,
> safety-affecting activities . . . he comes within the
> exemption in all workweeks when he is employed at such
> job. . . . Where this is the case, the rule applies
> **regardless of the proportion of the employee's time or of
> his activities which is actually devoted to such safety-
> affecting work** in the particular workweek and the
> **exemption will be applicable even in a workweek when the
> employee happens to perform no work directly affecting
> "safety of operation."** [emphasis added by the Court]

*Id.* at 284, *citing* 29 C.F.R. § 782.2(b)(3), and *Songer*, 618 F.3d at

474. To determine whether employees "likely to be . . . called

upon in the ordinary course of [their] work to perform . . .

safety-affecting activities that are interstate in nature, 29

C.F.R. § 782.2(b)(3)," we look to whether the employees "could

reasonably have been expected to [engage] in interstate commerce

consistent with their job duties.'" *Id., citing Songer*, 618 F. 3d

at 476 (finding that a reasonable expectation arose when about 2.75

percent of loads were transported across state lines"); *Morris v.

McComb*, 332 U.S. 422, 433-34 (1947)(applying the MCA exemption to

drivers who spent about 4 percent of their time transporting goods

in interstate commerce; *Starrett v. Bruce*, 391 F.2d 320, 323-24

(10th Cir. 1968)(applying the MCA exemption to a driver even though

the driver's employer derived no income from interstate transport,

because the employer solicited interstate business and would have

assigned the driver to interstate trips if the employer had

obtained such business."). *Id.*

Activities affecting the safety of motor vehicles are included in the work of drivers,[5] driver's helpers,[6] loaders,[7] or mechanics.[8]" 29 C.F.R. § 782.2(b)(1). A "loader" is "an employee of a carrier subject to the MCA whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country." *Allen v. Coil Tubing Services, LLC*, Civ. A. No. H-08-3370, 2012 WL 125989, at *16 (S.D. Tex. Jan. 11, 2012).

On August 10, 2005, the Safe, Accountable Flexible, Efficient Transportation Equity Act, Pub. L. No. 109-59, § 4142, 119 Stat. 1144, 1747, narrowed the Department of Transportation's regulatory authority, and thereby narrowed the FLSA exemption to only those motor carriers and motor private carriers who operated ***commercial***

---

[5] *See* 29 C.F.R. § 782.3 for extended definition. A driver is a person who drives a motor vehicle in interstate or foreign commerce, including employees with partial duties as drivers and other nondriving work. *Moore v. Performance Pressure Pumping Services, LLC*, Civ. Case No. 5:15-cv-346-RCL, 2017 WL 1501436, at *6 (W.D. Tex. Apr. 26, 2017).

[6] *See* 29 C.F.R. § 782.4 for extended definition. A "driver's helper" is an employee other than a driver who is required to ride on a motor vehicle while it is being operated in interstate or foreign commerce, including partial-duty helpers. *Moore,* Civ. Case No, 5:15-cv-346-RCL, 2017 WL 1501436, at *6.

[7] *See* 29 C.F.R. § 782.5 for extended definition. A loader is an employee of a carrier—i.e., a person providing motor vehicle transportation for compensation or a person whose duties include, among other things, the proper loading of his employer's motor vehicles so they may be safely operated on highways. *Moore*, 2017 WL 1501436, at *6.

[8] See 29 C.F.R. § 782.6 for definition.

motor vehicles under 49 U.S.C. § 31132. A "commercial motor vehicle is a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property if the vehicle has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, which ever is greater. *Garza v. Smith Int'l, Inc.*, Civil Action No. C-10-100, 2011 WL 835820, at *3 (S.D. Tex. March 7, 2011).

On June 6, 2008 Congress passed the SAFEEA-LU Technical Corrections Act of 2008 Pub. L. No. 110-244, §§ 305-06, 122 Stat. 1572, 1620-21 (2008), which affirmed that the MCA exemption does not apply to drivers operating motor vehicles that weigh 10,000 pounds or less. *Id.*

In *Songer*, 618 F.3d at 474, *quoting* 29 C.F.R. §782.2(b)(3), the Fifth Circuit concluded that the MCA exemption applies whether or not an employee regularly personally transports property by motor vehicle across state lines as long as the employee "can be reasonably expected to perform interstate transport" and his duties make it likely that he will "be called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of a driver".

## II. First Amended Collective Action Complaint (#14)

Pioneer, a Texas corporation, provides commercial relocation services and business support services, including furniture and office design division that designs, sells and installs workspace cubicles and office furniture, outside of Texas by hiring

subcontractors, one of which is defendant NOYPI, now known as BLUGGI, LLC. #26, Decl. of Roger Fritcher, Vice Pres. of Pioneer, Ex. 1 at ¶¶ 4-6. One such subcontract for provision of temporary labor, with a one-year term and continuing from month-to-month, was entered into on August 11, 2008 by Pioneer and moving company NYOPI, which also hires and provides other workers to Pioneer to help Pioneer in its commercial relocation business. *Id.* at ¶¶ 7-9. NOYPI is also a commercial moving company, but provides relocation services within and outside of Texas and in Louisiana, Oklahoma, Arkansas and Florida, and in other states when business opportunities presented themselves. *Id.* at ¶¶ 10-11. Individual Defendants Susan Sususco and Raul Sususco manage NOYPI. *Id.* at ¶¶9-11. Pioneer and NOYPI were directly involved in (a) the hiring and firing of employees, (b) the day-to-day operations as they relate to the terms of employment, workplace conditions, and the level of compensation to be received by employees, and (c) their finances and business decisions. On information and belief, Amaya alleges that BLUGGI manages staffing, payroll, and/or bookkeeping for Defendants. Pioneer, NOYPI, and BLUGGI, collectively "the Company," are joint employers of Amaya and the putative Members of the Class. 29 C.F.R. § 791.2(b)(2015).

Furthermore and at a minimum, NOYPI and BLUGGI function as a single enterprise as defined in the FLSA in that they (1) engage in related activities, (2) are a unified operation or under common control; and (3) share a common business purpose. *See, e.g.,*

*Donovan v. Grim Hotel Co.*, 747 F.2d 966, 969 (5th Cir. 1984)(The Act, 29 U.S.C. § 203(r), defines "enterprise" and "related activities (either though unified operation or common control) by any person or persons for a common business purpose and includes all such activities whether performed in one or more establishments by one or more corporate or organizational units"; "we have concluded that, despite corporate fragmentation in operation, a single 'enterprise' nevertheless exists for the purpose of the Act where: (A) the corporations perform related activities, (B) through unified operation or common control, (C) for a common business purpose."), *cert. denied*, 471 U.S. 1124 (1985).

According to the First Amended Collective Action Complaint (#14), Amaya was hired by NOYPI and assigned to work for Pioneer for approximately eight years. Pioneer provided commercial relocation services outside Texas by hiring the services of subcontractors. Amaya reported to Pioneer every work day for an assignment and would ride in a van driven by a Pioneer employee to a location chosen by Pioneer to install office furniture and cubicles sold by Pioneer to customers within the Houston areas.

Pioneer and NOYPI use a fleet of about thirty-five or more commercial trucks to transport customer property for their commercial relocation business. #26-1, Decl. of Roger Fritcher, Vice President of Pioneer, at ¶12.[9] During 2012, 2013, and 2014,

---

[9] The Gross Vehicle Weight Rating ("GVWR") of each commercial trucks they used was more than 10,001 pounds. *Id.*

NOYPI employees, including Amaya, loaded furniture and other customer products onto Pioneer and NOYPI commercial trucks. Of these, approximately fifteen involved interstate moving jobs in which employees, including Amaya, were expected to load furniture onto Pioneer and NOYPI's commercial trucks for transportation on interstate highways to Louisiana, Oklahoma, and Arkansas. *Id.* at ¶13.

NYOPI's employees, including Amaya, were responsible for balancing the load of the Pioneer or NOYPI commercial trucks, using their judgment and discretion to ensure safe operation on interstate highways. *Id.* at ¶15. Amaya testified during his deposition that he personally loaded Pioneer and NOYPI trucks and was personally assigned a task requiring him to load a commercial truck transporting furniture to Oklahoma. *Id.*, Ex. 1, Fritcher Decl. at ¶¶ 16-17.

### Standard of Review

Where the defendants assert an affirmative defense of motor carrier exemption from the payment of overtime wages in 29 U.S.C. § 13(b)(1) for work they performed in excess of forty hours per week at a rate of not less than one and half times their regular rate, the FLSA Defendants bear the burden of establishing

---

On June 6, 2008 Congress passed the SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, §§ 305-06, 122 Stat. 1572, 1620-21 (2008), which "reconfirmed that the MCA exemption does not apply to motor vehicles weighing 10,000 pounds or less." *Garza v. Smith Int'l, Inc.*, No. Civ. A. C-10-100, 2011 WL 835820, at *3 (S.D. Tex. March 7, 2011).

the Motor Carrier Exemption. *Brown v. AGM Entertainment, Inc.*, Civ. C. No. H-07-3439, 2008 WL 2704657, at *3 (S.D. Tex.--[Houston] July 8, 2008). A defendant who moves for summary judgment on an affirmative defense for which it will have the burden of proof at trial "must establish 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. v. America*, 878 F. Supp. 943, 962 (1995), *quoting Fonteno v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *see also Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 241 (5th Cir. 2006). It may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case." *Soto v. William's Truck Service, Inc.*, 2013 WL 487070 at *1 (N.D. Tex. Feb. 8, 2013). If the defendant satisfies this burden, the plaintiff must produce competent summary judgment proof demonstrating a genuine issue of material fact on at least one element of the defendant's defense as a matter of law. *Crescent Towing & Salvage Co., Inc. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994). Federal Rule of Civil Procedure 8(c), addressing affirmative defenses, states, "In responding to a pleading a party must affirmatively state any avoidance or affirmative defense . . . ." Furthermore "'the defendant must provide at least some information that alerts the plaintiff to what the problem is.'" *Lucas v. NYOPI, Inc.*, 2012 WL 4754729, at *2 (S.D. Tex. Oct. 3, 2012)(*quoting Lebouef v. Island Operating Co.*, 342 Fed. Appx. 983, 984 (5th Cir. 2009)), *aff'd*, 536 Fed. Appx. 416 (5th Cir. July 16,

2013).  Here Defendants plead as their affirmative defense that they are not required to pay overtime under the FLSA to Amaya [and the class] because his/their jobs was/were subject to the MCA overtime pay exemption under § 13(b)(1) of the FLSA.  "[E]ven a technical failure to comply precisely with Rule 8(c) may be excused so long as 'the affirmative defense is raised in the trial court in a manner that does not result in unfair surprise.'"  *Id.*  "At the heart of Rule 8(c) is the concern that a 'defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense.'", *citing  Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008).

### III.  Defendants' Motion for Summary Judgment

For the purpose of the motion for summary judgment, (1) Amaya claims that Pioneer, NOYPI, and BLUGGI are a FLSA joint employers (*id.* at ¶15); (2) they agree that NOYPI and BLUGGI are an FLSA enterprise; and (3) the individual Sususcos have a significant financial interest in NOYPI and BLUGGI (*id.* at ¶¶16-17).

Defendants also point to a similar FLSA case with the most of the same defendants, *Max Lucas v. NOYPI, Inc., Pioneer Contract Services, Inc., Susan Sususco and Ed Fritcher*, Case No. H-11-CV-1940, S.D. Tex., Houston Division, presided over by the Honorable Sim Lake.  Plaintiff in the instant action incorporates by reference some of the discovery filed in that action.

Defendants identify two issues in their motion for summary judgment:  (1) Was Plaintiff employed by a "motor carrier" within

the meaning of the Motor Carrier Act exemption?; and (2) Whether Plaintiff was engaged or reasonably expected to engage in activities that directly affected the operational safety of motor vehicles in interstate transportation?

## A. Is Plaintiff employed by a "motor carrier" within the meaning of the Motor Carrier Act exemption?

The threshold issue here is whether Amaya at relevant times was employed by carriers whose transportation of property by motor vehicle is subject to the Secretary of Transportation's jurisdiction. *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 471-72 (5th Cir. 2010). The Department of Labor ("DOL") regulations enforcing the FLSA state that the application of the MCA exemption to an employee "depends both on the class to which his employer belongs and on the class involved in the employee's job. 29 C.F.R. § 782.2(a). *Id.*" As noted,

> [t]he power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employment and those only who: (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act [codified at 49 U.S. 31502] . . . and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act. *Id.* Further, we have stated that "[t]he Secretary . . . need only possess the power to regulate the employees at issue; it need not actually exercise that power for the {MCA] exemption to apply." *Barefoot v. Mid-America Dairyman, Inc.*, No. 93-1684,16 F.3d 1216, at *2 (5th Cir. 1994)(per curiam).

To be within the Secretary of Transportation's jurisdiction, a motor carrier under the MCA must be engaged in interstate commerce. *Songer*, 618 F.3d at 471. Even though the MCA defines "interstate commerce" as "between a place in a state and a place in another state, the Fifth Circuit defines it as "the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce." *Id., citing Siller v. L&F Distributors, Ltd.*, No. 96-40549, 1997 WL 114907, at *1 (5th Cir. 1997)(per curiam).[10]

Amaya has conceded that Pioneer, NOYPI, and BLUGGI are FLSA joint employers. Susan Sususco owns NOYPI. Amaya and the potential class members are persons engaged in commerce or in the

---

[10] In *Merchants Fast Motor Lines v. ICC*, 5 F.3d 911, 917 (5th Cir. 1993)(internal citations omitted), cited by *Jackson v. Brown Bottling Group, Inc.*, 2010 WL 2519650, at *2 (S.D. Miss. June 14, 2010), the Fifth Circuit opined,

> "[w]hether transportation between two points in a single state is interstate or intrastate depends on the 'essential character' of the shipment. The critical factor in determining the shipment's essential character is the fixed and persisting intent of the shipper at the time of the shipment. The totality of the facts and circumstances will determine whether a shipper has the requisite intent to move goods continuously in interstate commerce."

*See also Songer*, 618 F.3d at 472, *citing Siller v. L&F, Ltd.*, No. 96-40549, 1997 WL 114907, at *1 (5th Cir. 1997)(per curiam)("'Although the MCA defines interstate commerce 'between a place in a state and a place in another state,' it has not been applied literally by the courts. In fact, we have defined it as the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce.'").

production of goods for commerce and are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under 29 C.F.R. § 782.2(a)(1). *Barefoot*, 16 F.3d 1216, at *2.

**B. Whether Plaintiff engaged in activities that directly affected the operational safety of motor vehicles in interstate commerce?**

According to the DOL and court decisions interpreting them, the MCA exemption applies to whether Plaintiffs engaged in activities that directly affected the safe operation of motor vehicles in interstate commerce. 29 C.F.R. § 782.2(a).

> [T]hose employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined:
>
> > (I) As that of a driver, driver's helper, loader, or mechanic, and
> >
> > (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. 782.2(b)(2). For purposes of the MCA, a "loader," and thus one who is exempt from overtime payment under the MCA exemption,

> for purposes of the MCA, is an employee of a carrier subject to the MCA, "whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the county." 29 C.F.R. § 782.5(a). A loader's duties "will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a "loader," in work directly affecting "safety of operations" so long as he

has responsibility[,] when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized.

*Allen*, 846 F. Supp. at 701, *citing* 29 C.F.R. § 782.5(a).

As indicated, "[i]n determining whether a particular employee falls within an exempt class, neither the title of the position or name given to the duties in controlling." 29 C.F.R. § 782.2(b)(2), *citing Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708 (March 31, 1947). It is "the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [DOT's] power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment." *Levinson v. Spector Motor Service*, 330 U.S. 649, 674-75 (1947); 29 C.F.R. § 782.2(b)(2). In *Songer*, 618 F.3d at 474 (citing 29 C.F.R. § 782.2(b)(3)), the Fifth Circuit opined regarding the DOL's regulations, "[I]f the employee's job duties are such that he is (or . . . is likely to be) called upon in the ordinary course of his work to perform either regularly or from time to time, safety-affecting activities of a [loader], he comes within the MCA exemption." Moreover, "a [loader] will remain under the [Secretary's] jurisdiction . . . for as long as the [employee] is in a position to be called upon to [load commercial vehicles] in interstate commerce as part of the [employee's] regular duties."

*Id., citing Application of the Federal Motor Carrier Safety Regulations*, 46 Fed. Reg. 37,902, 37,903 (Dep't of Transp. July 23, 1981).

Defendants maintain that Amaya's duties satisfy the legal definition of a "loader," and that he was part of a class of employees expected to perform such duties. NYOPI's employees, including Amaya, were responsible for the proper loading of furniture onto Pioneer or NYOPI commercial trucks to ensure the safe operation of such trucks on interstate highways to Louisiana, Arkansas and Oklahoma. Pioneer and NYOPI employees, including Amaya, were responsible for exercising judgment and discretion to plan and build a balanced load and placing, distributing, and securing customer property, including furniture, in a manner to ensure the safe operation of Pioneer and NYOPI/BLUGGI commercial trucks on interstate highways. From 2012-2014, on approximately 545 moving jobs, NYOPI employees, including Amaya, loaded furniture and other customer products on Pioneer and NOYPI commercial trucks. Fifteen of these jobs, in which Pioneer and NYOPI employees, including Amaya, loaded the trucks, required interstate travel and transportation of goods including furniture. Thus Amaya was reasonably expected to load furniture and related products on Pioneer and NYOPI commercial vehicles on interstate jobs. As a result Amaya was subject to the MCA exemption subject to the FLSA and their claims for payment of overtime wages should be dismissed as a matter of law and Defendants should be granted

the right to recover all costs of suit and reasonable attorney's fees.

## IV.  Plaintiff's Response (#27)

Plaintiff asserts that Defendants have failed to meet their burden of proof to show that the affirmative defense of the MCA exemption from overtime pay applies to them.  As noted, the § 13(a)(1) exemptions are narrowly construed against the employer seeking to assert them and the employer bears the burden of proving that employees are exempt."  *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990).  *See also Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir. 1995)("Because of the remedial nature of the FLSA, exemptions are to be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'").

Plaintiff argues that an exemption applies only to (1) employees whose work involves activities defined as those of a driver, a driver's helper, a loader, or a mechanic and (2) which directly affect the safety of operation of motor vehicles on the public highways in interstate commerce.  *Pyramid Motor*, 330 U.S. 695 (1947); 29 C.F.R. 782.7(a)(2017).  The exemption is not available to an employee driver, driver's helper, loader, or mechanic whose activities do not involve transportation in interstate commerce.  29 C.F.R. § 782.7(b)(2).

Plaintiff insists that Amaya did not work as a driver,

driver's helper, loader, or mechanic. Nor did his activities involve transportation in interstate commerce. He claims that the evidence shows that Amaya worked for NOYPI as a panel technician assigned to Pioneer. Ex. B, Amaya Dep., pp. 11-12; Ex. C, paystub bate-numbered PIONEER/NOYPI (AMAYA) 0001. His job during the whole nine years that he work ed for NOYPI was to install office cubicles sold by Pioneer to customers in the Houston area. Amaya Dep., Ex. B, pp. 15-16. Only a few times did he help carry cubicles and load them on the trucks that were used to transport them to customer locations in downtown Houston. *Id.*, p. 16. Amaya never drove a truck, but did ride in one when it was necessary to retrieve the cubicles from Pioneer's warehouse. Otherwise he used his own personal vehicle to drive to the job site to install the furniture. *Id.* at 18-19. Throughout his employment with one exception, installing furniture in Lufkin, Amaya worked exclusively in the Houston area. Furthermore, while NOYPI did provide employees to work in Pioneer's warehouse loading trucks, although NOYPI hired Amaya, it was to work as a panel technician to install office furniture, not as a loader. Ex. C, paystub bate-numbered PIONEER/NOYPI (AMAYA) 0001; Ex. B, p. 16; Ex. D, Warehouse Weekly Timesheets, bate-numbered PIONEER/NOYPI (AMAYA) 1126-1129; Ex. E, Amaya Pay Period Slips. Amaya, therefore, under the *de minimis* rule that service in such work being so trivial, casual, occasional, and insubstantial, was not regularly employed in work affecting safety on public highways. *Wirtz v. Tyler Pipe & Foundry*

*Co.*, 369 F.2d 927, 930 (9th Cir. 1966); *Pyramid Motor Freight*, 330 U.S. at 708 ("[T]he 'mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form such a trivial, casual or occasional part of the employee's activities, or his activities relate only to such articles or to such limited handling of them, that his activities will not come within the kind of loading which is described by the Commission and which in its opinion affects safety of operation.").[11] Thus Defendants have failed to meet their burden of proof on the applicability of the MCA exemption.

When the primary job of an employee is something beside that of a driver, driver's helper, loader or mechanic, the employee's occasional help with safety affecting activities was considered *de minimis* and the employee remained subject to the FLSA. *Wirtz v. C&P Shoe Corp.* 336 F.2d 21, 29 (5th Cir. 1964). See also Mitchell v. Meco Steel Supply Co.. 183 F. Supp. 777, 779 (S.D. Tex. 1956)(while employee's duties from time to time included assisting with the loading und unloading of trucks, his connection with such activities was so casual and inconsequential as not to bring him

---

[11]    In early cases addressing the MCA exemption the Fifth Circuit applied a *de minimis* standard to determine if the exemption should apply: "'On the other hand, where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis*,* the exception will not apply to [the employee] in any workweek so long as there is no change in his duties." *Id.*, *citing* 29 C.F.R. § 782.2(b)(3), *citing Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 707-08 (1947).

within the exception to the FLSA). Amaya contends that his situation fits *Mitchell*'s situation and does not fall into the class of work exempted by the MCA.

Furthermore, insists Amaya, any truck that Amaya helped to load was in connection with jobs that were performed in Houston and had no effect on interstate commerce. Since he worked only in the Houston area, he did not, and did not expect to, load trucks that traveled across state lines. There is no evidence that a panel technical is likely to be asked to travel in interstate commerce. To determine if the MCA exception is applicable, courts examine the volume of trips, both interstate and intrastate, and the manner in which trips are assigned to individual panel technicians. *See, e.g., Morris v. McComb*, 332 U.S. 422, 433-34 (1947); *Kimball v. The Goodyear Tire and Rubber Co.*, 504 F. Supp. 544, 548 (E.D. Tex. 1980)(evidence showed that less that one percent of the trips made by drivers were interstate so exemption did not apply); *Coleman v. Jiffy-June Farms*, 324 F. supp. 664 (S.D. Ala. 1970), *aff'd*, 458 F.2d 1139 (5th Cir.), *cert. denied*, 409 U.S. 948)(1972)(even though they crossed state lines two to three times a week, drivers were not exempt because the crossings amounted to less that one percent of all deliveries made). No such evidence supports exemption of Amaya, but only inadmissible conclusory statements.

## V.  Defendants' Reply (#28)

Defendants contend that they are entitled to summary judgment under the MCA exemption because Amaya failed to create a genuine

fact issue as to whether he was employed by a motor carrier and was part of a class of employees which engaged, or was reasonably expected to engage, in activities directly affecting the operational safety of motor vehicles in interstate transportation. In his response, Amaya concedes that Defendants are "motor carriers" as the term is defined by the MCA, #27 at¶26 ("In this case Amaya does not dispute the Defendants' qualification as a Private Motor Carrier."). Thus the only remaining issue is whether he belonged to a class of employees whose activities affect the safety of operation of motor vehicles on public highways.

As noted, "[i]n determining whether an employee falls [within an] exempt category, neither the title of the position nor name given to duties is controlling [here, Amaya's job as a "panel Tech"] is controlling." 29 C.F.R. § 782.2(b). Instead, "the character of the duties involved in the performance of the job are determinative." *Garza*, 2011 WL 835820 at *5. Amaya admits he was assigned to perform the safety-affecting activities of a loader in the ordinary course of his work (#26-2, p.2.). Beyond physical effort, these duties required the exercise of judgment and discretion to plan and build a balanced load and place, distribute and secure goods in a manner that would ensure safe operation on interstate highways. Such was the common practice and expectation for all workers employed in Amaya's position. #26-1, ¶¶ 15-17. Loading trucks with office equipment and other goods was an "integral and inseparable part" of his job as a Panel Tech. *Garza*,

2011 WL 835820, at *10 *(citing Morris v. McComb*, 322 U.S. 422
(1947))*, opining:

> When interstate trips are a "natural, integral, and
> apparently inseparable part of the common carrier service
> of the employer and his drivers." and where, in normal
> course of business, interstate commerce trips are
> "distributed generally throughout the year and their
> performance [is] shared indiscriminately by the drivers
> and [is] mingled with the performance of other like
> driving services," employees are subject to the Motor
> Carrier Act exemption even where not all drivers drive in
> interstate commerce.

Amaya's effort to minimalize the amount of time he spent loading
trucks is beside the point because the Fifth Circuit has held "if
the employee's job duties are such that he is (**or . . . is likely
to be**) called upon in the ordinary course of his work to perform,
either regularly or from time to time, safety-affecting activities
as a [loader], he comes within the MCA exemption." *Songer*, 618 F.
3d at 474, *citing* 29 C.F.R. section 782.2(b)(3). Amaya not only
was likely to be called upon to perform safety-affecting activities
of a loader, he was actually called to and did perform these
activities. #26-2, p.2.; #26-1 paragraphs 15-17. In addition,
other Panel Techs performing safety-affecting activities of a
loader and other individuals employed in Amaya position and other
positions were also responsible for properly loading commercial
trucks owned and operated by Pioneer to ensure safe operation on
interstate highways. #26-1, paragraphs 15-17.

Furthermore Defendants argue that the Fifth Circuit has moved
away from the *de minimis* test in determining whether the MCA

exemption should apply.  *Garza*, 2011 WL 835820 at *10, *citing*

*Villegas v. Dependable Const. Services, Inc.*, 2008 WL 5137321, *24

(S.D. Tex. Dec. 8, 2008)("[T]he Fifth Circuit has moved away from

the *de minimis* test for drivers whose work only rarely involved

interstate deliveries.").  "It is the character of the activities

rather than the proportion of either the employee's time or of his

activities that determines the actual need for the [Secretary's]

power to establish reasonable requirements with respect to

qualifications, maximum hours of service, safety of operation and

equipment." *Id., citing Villegas, id.,* and *quoting Morris,* 332

U.S. at 432.  The Fifth Circuit made clear in *Songer*, 618 F.3d at

474, that the MCA exception applies where the employee is "likely

to be called" upon in "the ordinary course of his work to perform

. . . from time to time . . . the safety-affecting activities" of

motor vehicles in the transport of interstate commerce.

### Court's Decision

After careful review of the record and the applicable law, the

Court agrees with Defendants that their motion for summary judgment

should be granted.

Under the two-part *Songer* test (whether plaintiff is employed

by a carrier and whether the plaintiff engages in activities that

directly affect the operational safety of motor vehicles in the

transport of property in interstate commerce), the evidence

demonstrates that the MCA exemption from FLSA's overtime

requirements, 29 U.S.C. § 213(b)(1), clearly applies here.

Regarding the first prong, not only has Amaya conceded that he worked for eight years for a "motor carrier" as defined by the MCA, and part of his duties were to work as a "loader" of trucks, weighing more than 10,000 pounds, involved in transportation in interstate and intrastate commerce, one of the work activities that qualifies an employee of a carrier for the exemption. 29 C.F.R. 782.2(b)(2). Fifteen of these trucks were involved in interstate moving jobs. Thus Amaya is employed by motor carriers Pioneer and NOYPI, who transfer property by vehicle, and under section 204 of the MCA are subject to the jurisdiction of the Secretary of Transportation, who has the power to establish qualifications and maximum hours of service under section 21502 of the MCA if the motor carriers transport persons by motor carrier interstate between a place in a state and a place in another state or intrastate in Texas, as is the case here.

Second, using discretion and judgment,[12] Amaya engaged in activities of a character directly affecting the safety of operation of motor vehicles in interstate or foreign commerce within the meaning of the MCA when he engaged in loading and the office furniture into his employers' commercial trucks in a manner ensuring they could be safely operated on highways for transport to another location, interstate or intrastate. *See Garza*, 2011 WL 835820 at *8, *citing* 29 C.F.R. § 782.2. He made sure that the

---

[12] *See Wirtz v. C&P Shoe Corp.*, 336 F.2d 21, 29 (5th Cir. 1964).

loads were balanced and secure, thus directly affecting the operational safety of motor vehicles, so the exemption from the FLSA's overtime requirements for employees who are subject to the jurisdiction of the Secretary of Transportation under the MCA, 49 U.S.C. § 31502, applied to him.

Even if the Fifth Circuit is not abandoning the *de minimis* rule, the evidence indicates that Amaya's loading activities were not "so trivial, casual or occasional" to disqualify him as a loader under the MCA. *Lucas v. NYOPI, Inc.*, Civ. A. No. H-11-1940, 2012 WL 4754729, at *7 (S.D. Tex. Oct. 3, 2012), *aff'd*, 536 Fed. Appx. 416 (5th Cir. July 16, 2013). Plaintiff has not disputed any of Defendants' evidence regarding Amaya's loading activities.

The Court notes that § 29 C.F.R. 782.2(b)(2) contains a section reflecting the Fifth Circuit's expanded interpretation of "interstate": "The result is not different where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce within the meaning of both acts; the facts that other carriers transport it out of or into the State is not material. . . . Transportation within a single State is in interstate commerce within the meaning of the Fair Labor Standards Act where it forms a part of a "practical continuity of movement" across State lines from the point of origin to the point of destination [omitting cited cases]."

Thus the exemption from FLSA overtime provisions is available

to Defendants for Amaya's work and he is not entitled to overtime pay.

Accordingly, the Court

ORDERS that Defendants' motion for summary judgment (#26) is GRANTED.  A final judgment will issue by separate order.

SIGNED at Houston, Texas, this __30th__ day of __September__, 2017.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE